ADGER *v.* ALSTON.

1. Where a suit was brought in Louisiana, for a debt due January 1st, 1858, the writ being served February 29th, 1868, *held* that in view of the decision in *The Protector* (12 Wallace, 700) that in the State named, the war of the rebellion began on the 19th of April, 1861, and closed on the 2d of April, 1866, the plea of what is known in Louisiana as "prescription of five years" could not be sustained.

2. A statute of Louisiana passed in 1858 enacts that—

"Parol evidence shall not be received to prove any acknowledgment or promise of a party deceased to pay any debt or liability against his succession, in order to take such debt or liability out of prescription, or to revive the same after prescription has run or been completed; but in all such cases the acknowledgment or promise to pay shall be proved by written evidence, signed by the party to be charged, or by his specially authorized agent or attorney in fact."

The purpose of such an act is that no verbal declaration of a deceased man shall be given in evidence to prove against him an acknowledgment of a debt which would otherwise be barred by the statute of limitations; and that no written evidence shall be offered unless signed by him or his agent.

*Held* accordingly that oral statements of conversations and admissions of a decedent, tending to prove an acknowledgment of a debt, as due, within the period of prescription, and also indorsements, by himself, on the bond of payments made of interest up to a term which took it out of that period, were neither of them admissible under the statute, in a suit against his estate.

ERROR to the Circuit Court for the District of Louisiana; the case being thus:

On the 29th of February, 1868, Alston, a citizen of South Carolina, brought an action in the court below against W. E. Adger, administrator of John Adger, the latter in his lifetime and the former at the commencement of the action citizens of Louisiana; the foundation of the action being a

penal bond conditioned for the payment of $4500, with interest, *on the* 1*st of January*, 1858. Anticipating, probably, a defence of what is called in Louisiana "prescription" (a defence equivalent to that known in other States as that of the "statute of limitations"), the petition set forth that the interest had been paid to the 1st of January, 1863; all which it was alleged "will appear by the said bond annexed for reference and made part of the petition." An instrument which purported to be the bond was accordingly annexed to the petition; and on it were various indorsements in the handwriting of Alston, or in what purported to be so, and signed by *him*, acknowledging payment of interest at various times "up to January 1st, 1863."

The law of prescription of the State of Louisiana was relied on as a defence, and this defence presented the only matter assigned for error in this court.

The defendant pleaded and relied on the five years' prescription in his *answer*, and also filed what in the practice of that State is called the *exception* of the five years' prescription. This exception according to that practice was tried by the court without a jury, and on this trial the court ruled, as is shown by a bill of exceptions, "that the whole of the time of the late rebellion or civil war, viz., from the 26th of January, 1861, when the ordinance of secession was passed by the convention in Louisiana, to the 20th of August, 1866, when the proclamation of the President was made, declaring the restoration of peace between the States, should be deducted from and not counted as the time during which prescription ran, and, therefore, there was not a period of five years between the claim as made in the plaintiff's petition, to the service of the citation in the suit at bar."

This court had held, in *United States* v. *Anderson*,* previously to the decision in the present case in the Circuit, that as to the time of bringing suits in the *Court of Claims under the Captured and Abandoned Property Act*, which, by the terms of that act, must be within two years after the close

---

* 9 Wallace, 56.

of the war, the proclamation of the President of August 20th, 1866, announcing that peace prevailed all over the United States, which had also been adopted by Congress as the close of the war in regard to certain military services, must, as to those matters, be held to be the date of its termination. No date was fixed for its commencement.

Notwithstanding the ruling already mentioned of the court below, by which the court decided against the plea of prescription, the question of prescription was submitted to the jury on the facts under the defence set up in the answer; and the court admitted on the trial, against the defendant's objection, oral statements of conversations and admissions of the defendant's intestate, tending to show that he had acknowledged the debt as lately as 1863, and also admitted for the same purpose the indorsements on the bond of the payment of interest.

A statute of Louisiana, passed in 1858,* it is here necessary to state, enacts as follows:

"SECTION 2. Hereafter parol evidence shall not be received to prove any acknowledgment or promise of a party deceased to pay any debt or liability against his succession, in order to take such debt or liability out of prescription, or to receive (revive) the same after prescription has run or been completed; but in all such cases the acknowledgment or promise to pay shall be proved by written evidence, signed by the party to be charged, or by his specially authorized agent or attorney in fact."

Judgment having been given for the plaintiff the case was now here on error.

*Mr. W. W. Boyce, in support of the judgment, and for the defendant in error:*

1. Was the plea of prescription set up made out? It will be admitted by all that the civil war, during which the Federal courts were closed, suspended the running of the prescription or statute of limitations. This is settled by *Hanger* v. *Abbott.*

---

* Acts of Louisiana of 1858, No. 208, p. 148.

Now, we must assume that the commencement of the war was on the day when the ordinance of secession of Louisiana passed. This was January 26th, 1861. The close of the war was decided by this court in *United States* v. *Anderson* to have been August 20th, 1866. In other words, the war in Louisiana lasted five years, six months, and twenty-four days. Then the matter of the prescription of five years stands thus:

|  | Yrs. | mos. | dys. |
|---|---|---|---|
| From January 1st, 1858, when the bond was due, to January 26th, 1861, when suit, before the war, might have been brought, is . . . . . | 3 | 0 | 26 |
| From August 20th, 1866, when an ability to sue, after the war began, till February 29th, 1868, when the writ was served, is . . . . . . . | 1 | 6 | 9 |
| Whole term, from date when the bond became due to the time when the writ was served, within which suit could have been brought, . . . . . | 4 | 7 | 5 |

Or, putting the thing in another form—

|  | Yrs. | mos. | dys. |
|---|---|---|---|
| From January 1st, 1858, when the bond became due, to February 29th, 1868, when the writ was served, was . . . . . . . . . . | 10 | 1 | 29 |
| The war, as above stated, and during which no suit could be, lasted, as above stated, . . . . | 5 | 6 | 24 |
| Leaving as the whole term, when the ability to sue existed, . . . . . . . . . | 4 | 7 | 5 |

Unless, therefore, we assume some later date than the actual "secession" of the State for the commencement of the war, or fix some later date for its ending than what this court fixed in *United States* v. *Anderson*, or do both, the court below decided rightly that the plea of five years' prescription was not made out.

2. Did the evidence admitted contravene the statute of 1858?

The "acknowledgment or promise," required by the second section of the act of 1858, to be proved by " written evidence," can in the nature of things, apply to express acknowledgments or promises alone. It cannot apply to implied ones. Express acknowledgments or promises are spoken words, and *can* always be put in writing. Im-

plied acknowledgments or promises are not spoken words, but conclusions of law from antecedent facts, and *cannot* ever be put in writing. What can be in words, the statute requires to be in writing. What cannot from their very nature be in words the statute does not require to be in writing.

This distinction is supported by analogies in the law. For example, the liability of a guarantor under the statute of frauds is required to be in writing. But where the guarantor is liable on other grounds than his guarantee, the promise need not be in writing.* 

So the statute of frauds which requires certain declarations of trust to be proved by writing, exempts trusts arising by implication of law; that is, express trusts must be evidenced by writing; implied trusts not.†

In addition. The policy of the act of 1858 was to guard against recollections of verbal statements or conversations, so difficult to remember precisely, and so easy of perversion. But this policy does not apply to proving a fact like payment. "The payment of principal or interest," says Tindall, C. J.,‡ "stands on a different footing from the making of promises, which are often rash or ill interpreted, while money is not usually paid without deliberation; and payment is an unequivocal act, so little liable to misconstruction as not to be open to the objection of an ordinary acknowledgment. We think payment of money by one of several joint contractors an acknowledgment not within the mischief or the remedy provided by the legislature against the effect of an oral promise."

The distinction between part payment and a verbal acknowledgment or promise is specially taken by Lord Tenterden, act 9, Geo. IV, c. 14.§

And an admission by a creditor that money has been paid him (on account of the admission being proved, to be made before the prescription or statute begins to run), being an

* 1 Saunders, 211, note J; Smith on Contracts, § 48, note A, p. 36.
† Hill on Trustees, p. 56.　　‡ Wyatt v. Hodson, 8 Bingham, 309.
§ See act in full, Angell on Limitations, Appendix, ch. 20, p. 8. Edition of 1869.

admission against his interest, may be well received as evidence. In the case of a person deceased, the presumption is that they were so made.

*Messrs. T. J. Semmes and W. A. Meloy, contra.*

Mr. Justice MILLER delivered the opinion of the court.

This court held, previous to the decision in the present case in the circuit, that as to the time of bringing suits in the Court of Claims under the Captured and Abandoned Property Act, which must be within two years after the close of the war, the proclamation of the President of August 20th, 1866, announcing that peace prevailed all over the United States, which had also been adopted by Congress as the close of the war in regard to certain military services, must, as to those matters, be held to be the period of its termination. No period was fixed for its commencement, because none was necessary.

Assuming that the commencement of the war was the ordinance of secession of Louisiana, and its close the President's proclamation of August 20th, 1866, and applying the principle of deducting the period of the war from the time in which prescription would have otherwise been counted, as held by this court in *Hanger* v. *Abbott*,* the ruling of the court below as shown by the bill of exceptions, on the exception of the five years' prescription, would have been sound.

But in the case of *The Protector*,† the question of the precise period of time to be deducted for the interruption in the running of the statute of limitations to be made in consequence of the civil war, was much considered; and the necessity of fixing the precise period was felt by the court to be very pressing. An examination of the several proclamations of the President, and other acts of the political department of the government was had; and as a result it was found that different periods of time must be fixed for different States. It was held that the commencement of the war

---

* 6 Wallace, 532.                    † 12 Id. 700.

must be governed by the President's proclamations of blockade, of which there were two. The first, dated April 19th, 1861, embraced the States of South Carolina, Georgia, Alabama, Florida, Mississippi, Louisiana, and Texas; and the second, dated April 27th, 1861, embraced the States of Virginia and North Carolina. So there were two proclamations declaring that the war had closed; the first, issued April 2d, 1866, embraces the States of Virginia, North Carolina, South Carolina, Georgia, Florida, Mississippi, Tennessee, Alabama, Louisiana, and Arkansas; and the second, issued on the 20th of August, 1866, embracing the State of Texas. And it was held that these dates must be taken as the commencement and the close of the war as to those States respectively, in the question of the time to be deducted for the existence of that war, in counting time under the statutes of limitation.

Under this rule the time which elapsed between the 19th of April, 1861, and the 2d April, 1866, being deducted from the time of the maturity of the bond and the service of the writ in this case, there still remained more than five years, and the plea of prescription in that view would be a bar.

But the question of prescription was submitted to the jury on the facts, under the defence set up in the defendant's answer, and on the trial the court admitted as evidence, against the objection of the defendant, oral statements of conversations and admissions of decedent, tending to prove an acknowledgment of the debt, as due, within the period of prescription, and also admitted for the same purpose indorsements on the bond of payments made of interest up to the year 1863.

In this we think the court erred also. A statute of the legislature of Louisiana, of the year 1858, by its second section enacts that: "Hereafter parol evidence shall not be received to prove any acknowledgment or promise of a party deceased to pay any debt or liability against his succession, in order to take such debt or liability out of prescription, or to revive the same after prescription has run or been completed; but in all such cases the acknowledgment or promise

to pay shall be proved by written evidence, signed by the party to be charged, or by his specially authorized agent or attorney in fact."

The principle of this act is not new in the legislation of England and this country, and its purpose and construction are equally obvious and well understood. It is that no verbal declaration of a deceased man shall be given in evidence to prove against him an acknowledgment of the debt, which would otherwise be barred by the statute of limitations; and that no written evidence shall be offered unless signed by him or his agent.

The case before us comes precisely within both the letter and spirit of the statute. The evidence offered was parol evidence, and if the indorsements of credits on the bond are not strictly parol they are not written evidence signed by the party to be charged; and the object is to prove an acknowledgment of the debt, against his succession, of a deceased man, by such evidence.

There seems no room for doubt that whatever may be the rule as to parties who are alive, no such evidence is admissible against the administrator of a deceased party.

On both points ruled by the court concerning prescription we think the court erred, and the judgment is, therefore, REVERSED, with directions to grant

A NEW TRIAL.