In re WATIES & Co.

Ex parte CHICK et al.

*(District Court, D. South Carolina. June 22, 1889.)*

BANKRUPTCY—PREFERRED CLAIMS—WAGES OF LABORERS.

In computing the time under Rev. St. U. S. § 5101, giving priority to the wages of operatives, clerks, etc., to the amount of $50, "for labor performed within six months next preceding the first publication of the notice of proceedings in bankruptcy," the period intervening between the institution of the proceedings and the final adjudication is to be disregarded.

In Bankruptcy. Report on final dividend.

*Clark & Muller*, for assignee.

*John Bauskett*, for petitioners.

SIMONTON, J. A petition in involuntary bankruptcy was filed against John Waties & Co. on 26th October, 1875. The registrar, before whom the case was brought, granted the prayer of the petition. His ruling was set aside by the district judge. The circuit court, reviewing the matter, revised the decree of the district court, and the firm were adjudicated bankrupts on 8th February, 1877. The estate has been administered and a scheme for final dividend made. The petitioners except to the scheme prepared by the registrar on the ground that they were operators and clerks of the bankrupts within the period of six months before the institution of the proceedings in bankruptcy, and as such entitled to a preference to the estate of $50 each, and that this has not been allowed to them by the registrar. Section 5101, Rev. St. provides: In the order for a dividend the following claims shall be entitled to priority, and to be first paid in full in the following order: (1) Fees and costs of the proceedings; (2) debts to the United States; (3) debts to the state; (4) wages due to any operator, clerk, or house servant to an amount not exceeding $50 for labor performed within six months next preceding the first publication of the notice of proceedings in bankruptcy. Under a literal application of this provision the petitioners could have no claim. The first publication of the notice of the proceedings in bankruptcy was made after the adjudication in February, 1877, 16 months after petition filed instituting the proceedings. Indeed, a literal application of the provisions of this subdivision would exclude similar charges in very many cases of involuntary bankruptcy, certainly in all contested cases. Between the filing of the petition and the final decision in contested cases six months will frequently elapse. When it is considered that these claims are highly favored by the act, being in the same category with the expenses attending the proceedings, and with debts due the public, coming next after these last, a construction making them a dead letter in so many instances cannot be the correct one. Proceedings in involuntary bankruptcy generally come on the respondents suddenly, and without warning. No time is given for preparation. The business is

shut down at once, and all operators and laborers, a class who live from day to day, are thrown out without resources. The purpose of this provision is to protect them. The literal construction defeats this intent. Again, everything relates back to the filing of the petition. Only debts existing then are provable, and no claims can be paid out of the assets which did not exist at that time. So these petitioners are without remedy. Pending the proceedings they cannot sue their claims, and if they did, and the adjudication be subsequently declared, their action would be nugatory. See cases collected by Bump on Bankruptcy, 172. The true construction of this section is that in computing the time the period intervening between the institution of the proceedings and the final adjudication must be disregarded. This is in analogy with the rule prevailing in like cases. Whenever there is a legal inability to sue, the period of such inability is never reckoned in the currency of the statute of limitations. *The Protector*, 9 Wall. 687; *Adger* v. *Alston*, 15 Wall. 555; *In re Eldridge*, 2 Hughes, (U. S.) 256; *Hanger* v. *Abbott*, 6 Wall. 532; *Montgomery* v. *Hernandez*, 12 Wheat. 129. The assets largely exceed the preferred claims. It is ordered that the scheme of the dividend be amended, and that each of the petitioners whose claim is $50, or less, be paid in full, and that to such of them as hold claims exceeding $50 there be paid, respectively, the sum of $50, with leave as to the remainder of his claim to come in *pro rata* on the amount for general distribution. Costs of these proceedings payable out of the estate.